IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| OPTIMUM CONTENT PROTECTION LLC,<br><br>                Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>                Defendant. | Civil Action No. 6:13-cv-00741-KNM<br><br>Hon. K. Nicole Mitchell |

**DEFENDANT MICROSOFT CORPORATION'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY DUE TO INDEFINITENESS**

## **TABLE OF CONTENTS**

I. INTRODUCTION ...............................................................................................................1

II. STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ...................................1

III. STATEMENT OF UNDISPUTED MATERIAL FACTS ..................................................2

IV. FACTUAL BACKGROUND..............................................................................................3

V. LEGAL STANDARD..........................................................................................................4

VI. ARGUMENT.......................................................................................................................5

    A. The Asserted Claims Are Indefinite Because The '470 Patent Fails To Disclose What Constitutes "Any Applicable" Graphics And Audio..........................................................................................................5

    B. The Asserted Claims Are Indefinite Because They Each Claim Both An Apparatus And A Method Of Using The Apparatus................................8

    C. The Asserted Claims Are Indefinite Because They Contain Permissive Language That Makes Infringement Uncertain...................................11

VII. CONCLUSION..................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Advanced Display Techs. of Texas, LLC v. AU Optronics Corp.*,
 No. 6:11-cv-011, 2012 WL 2872121 (E.D. Tex. Jul. 12, 2012) ................................................5

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ..................................................................................................................4

*Atlas IP, LLC v. St. Jude Med., Inc.*,
 No. 14-21006-CIV, 2014 WL 3764129 (S.D. Fla. Jul. 30, 2014) ..........................................12

*Aventis Pharma S.A. v. Hospira, Inc.*,
 743 F. Supp. 2d 305 (D. Del. 2010) .......................................................................................10

*Enzo Biochem, Inc. v. Applera Corp.*,
 599 F.3d 1325 (Fed. Cir. 2010) ..............................................................................................11

*Halliburton Energy Servs., Inc. v. M-I LLC*,
 514 F.3d 1244 (Fed. Cir. 2008) ................................................................................................5

*In re Johnston*,
 435 F.3d 1381 (Fed. Cir. 2006) ..............................................................................................11

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
 430 F.3d 1377 (Fed. Cir. 2005) ................................................................................................8

*Light Transformation Techs. LLC v. Lighting Science Grp. Corp.*,
 No. 2:12-cv-826, 2014 WL 3402125 (E.D. Tex. Jul. 11, 2014) ...............................................6

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
 134 S. Ct. 2120 (2014) ..................................................................................................... passim

*Ormco Corp. v. Align Tech., Inc.*,
 463 F.3d 1299 (Fed. Cir. 2006) ................................................................................................8

*Rembrandt Data Techs. v. AOL, LLC*,
 641 F.3d 1331 (Fed. Cir. 2011) ........................................................................................10, 11

*SIPCO, LLC v. Abb, Inc.*,
 No. 6:11-cv-0048, 2012 WL 3112302 (E.D. Tex. Jul. 30, 2012) .............................................8

*Skyhook Wireless, Inc. v. Google, Inc.*,
 No. 10-11571, 2014 WL 898595 (D. Mass. Mar. 6, 2014) ......................................................7

*UltimatePointer, L.L.C. v. Nintendo Co.*,
 No. 11-cv-496, 2013 WL 2325118 (E.D. Tex. May 28, 2013) ..............................................11

**STATUTES**

35 U.S.C. § 101 ................................................................................................................................8

35 U.S.C. § 112 ........................................................................................................................1, 13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) .......................................................................................................................4

I.  **INTRODUCTION**

Microsoft Corporation ("Microsoft") moves for summary judgment that claims 4, 5, 8, 9, 10, 13, 15, 20, 22 and 28 ("the asserted claims")[1] of U.S. Patent No. 7,502,470 ("the '470 patent")[2] are indefinite and thus invalid under 35 U.S.C. § 112, ¶ 2.

The asserted claims are indefinite for several independent reasons. Every asserted claim requires "any applicable" graphics and audio data be added to protected content without the patent providing any parameters to determine what constitutes "applicable" data. Also, the claims impermissibly mix method steps and apparatus elements, making it unclear how the manufacturer or the user, if anyone, would infringe. Finally, the asserted claims use the permissive limitation "may add," creating uncertainty as to whether a feature specified by the claims is required for infringement. Under the indefiniteness standard recently articulated by the Supreme Court in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014), as well as Federal Circuit precedent, these defects support summary judgment that the asserted claims are invalid under 35 U.S.C. § 112, ¶ 2, as a matter of law.

II.  **STATEMENT OF ISSUES TO BE DECIDED BY THE COURT**

1. Whether the term "any applicable" renders the asserted claims indefinite.

2. Whether reciting apparatus elements and method steps renders the asserted claims indefinite.

---

[1] On September 18, 2014, Optimum Content Protection LLC ("OCP") preliminary elected to assert dependent claims 4, 5, 8, 9, 10, 13, 15, 20, 22 and 28. *See* Exhibit 1. Microsoft reserves the right to challenge the validity of additional claims of the '470 patent should additional claims become at issue.

[2] A copy of the '470 patent is attached as Exhibit 2.

1

    3.    Whether the terms "may add" and "any added" render the asserted claims indefinite.

### III. STATEMENT OF UNDISPUTED MATERIAL FACTS

    1.    Independent claim 1 of the '470 patent recites:

**A method** for content protection in an apparatus comprising:

> receiving encrypted data in the apparatus according to a first encryption protocol **wherein the apparatus comprises**:
>
>> an open system architecture configured to allow end users to add or remove hardware components, software modules, or both;
>>
>> a closed subsystem of the apparatus to receive the encrypted data, wherein the closed subsystem does not allow end users to add hardware components or software modules thereto or remove hardware components or software modules therefrom; and
>>
>> combiner circuitry that **may add** unprotected graphics and audio data to raw data;
>
> generating raw data in a closed subsystem of the apparatus within the open system architecture, the raw data being generated in the closed subsystem by decrypting the encrypted data and performing additional processing on the encrypted data wherein the additional processing comprises:
>
>> decompressing the encrypted data if compressed encrypted data is received;
>>
>> and manipulating the encrypted data for output;
>
> preventing access to the raw data outside of the closed subsystem;
>
> adding **any applicable** unprotected graphics and audio data to the raw data using the combiner circuitry;
>
> generating protected data in the closed subsystem by re-encrypting the raw data using a second encryption protocol to generate protected data with **any added** graphics and audio data; and
>
> asserting the protected data from the closed subsystem to an external device or system.

Ex. 2 col. 21, l. 44 – col. 22, l. 10 (emphases added).

    2.    Asserted claims 4, 5, 8, 9 and 10 depend, directly or indirectly, from claim 1. *Id.* col. 22, ll. 15–35.

3. Independent claim 12 of the '470 patent recites:

**<u>An apparatus comprising</u>**:

> an open system architecture configured to allow end users to add or remove hardware components, software modules, or both;
>
> combiner circuitry that **<u>may add</u>** unprotected graphics and audio data to raw data;
>
> a closed subsystem within the open system architecture wherein the closed subsystem **<u>does not allow</u>** end users to add hardware components or software modules thereto or remove hardware components or software modules therefrom, the closed subsystem configured to:
>
>> receive encrypted data according to a first encryption protocol,
>>
>> decrypt and perform additional processing on the encrypted data to generate raw data wherein the additional processing comprises:
>>
>>> decompressing the encrypted data if compressed encrypted data is received, and
>>>
>>> manipulating the encrypted data for output,
>>
>> add **<u>any applicable</u>** unprotected graphics and audio data to the raw data using the combiner circuitry, and
>>
>> re-encrypt the raw data to generate protected data usin a second encryption protocol to generate protected data with **<u>any added</u>** graphics and audio data,
>
> further wherein the closed system **<u>prevents</u>** access to the raw data outside of the closed subsystem; and
>
> an output, the closed subsystem **<u>to assert</u>** the protected data to an external device or system via the output.

*Id.* col. 22, ll. 38–65 (emphases added).

4. Asserted claims 13, 15, 20, 22 and 28 depend, directly or indirectly, from claim 12. *Id.* col. 22, l. 66 – col. 24, l. 8.

### IV. FACTUAL BACKGROUND

The '470 patent relates to a method and apparatus for protecting content within computing systems that have an "open architecture," that is, systems that allow users to add or remove hardware or software. *See* Ex. 2 col. 1, ll. 15–17. The '470 patent attempts to prevent

3

the unauthorized use of encrypted content that is decrypted within an open computing system for delivery to a user, such as, for example, a movie played on a personal computer (PC) from a DVD. *Id.* col. 1, ll. 32–41. The '470 patent proposes to create a "closed subsystem" within the open computing system where the encrypted content can be processed for the user without any hardware or software outside the closed subsystem being able to access the protected content. *See, e.g.,* col. 8, ll. 47–57.

In the '470 patent, the closed subsystem (also called "DDR unit") receives encrypted content, decrypts the content to generate raw data, performs processing on the raw data (e.g., decompressing), and re-encrypts the raw data. *See id.* col. 9, ll. 15–20; col. 12, ll. 33–37. After re-encryption, the protected content can be sent to an external device (e.g., a display). *See id.* col. 9, ll. 30–49. Alternatively, the re-encrypted content can be forwarded to another closed subsystem "for combining the output of a DDR unit with standard (unprotected) graphics and audio output of an open system." *Id.* col. 16, ll. 28–30. This second closed subsystem (the "combiner circuitry") decrypts the content received from the DDR, adds unprotected content received from the open system, and re-encrypts the combined data for delivery to an external device. *See id.* col. 17, ll. 11–28.

## V.   LEGAL STANDARD

Summary judgment is appropriate when the record shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial, i.e., that the evidence is such that a reasonably jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A determination of invalidity based on claim indefiniteness is a question of law amenable to summary judgment. *See, e.g., Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). A patent is invalid for indefiniteness "if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 134 S. Ct. at 2124. "It cannot be sufficient that a court can ascribe *some* meaning to a patent's claims." *Id.* at 2130.

## VI. ARGUMENT

### A. The Asserted Claims Are Indefinite Because The '470 Patent Fails To Disclose What Constitutes "Any Applicable" Graphics And Audio

The indeterminate limitation "any applicable" in independent claims 1 and 12 makes them indefinite because neither the '470 patent nor its prosecution history defines what constitutes "applicable" graphics and audio data. The scope of claims 1 and 12, thus, cannot be ascertained with reasonable certainty.

The '470 patent is silent regarding the meaning of "applicable" in the context of the purported invention. The specification neither mentions the word "applicable" nor discusses what type of unprotected graphics and audio may be "applicable" for purposes of the claims. All the patent discloses is that "standard graphics and/or audio output of an open system" may be added to the protected content. *See* Ex. 2 col. 16, ll. 29 – 30; *see also* ll. 35–36. Yet the claims do not reach just "any" graphics or audio, but require "applicable" graphics and audio.

Faced with this language, one reasonably would understand that some graphics and audio may not be "applicable" and thereby avoid the claim. But, without any guidance in the patent regarding what graphics or audio are "applicable" compared to just "any," there is no way to determine the scope of the claims with reasonable certainty. *See Nautilus*, 134 S. Ct. at 2124; *see also Advanced Display Techs. of Texas, LLC v. AU Optronics Corp.*, No. 6:11-cv-011, 2012

5

WL 2872121, at **12-14 (E.D. Tex. Jul. 12, 2012) ("highly modulated" indefinite where intrinsic evidence failed to provide sufficient guidance as to what was "highly" modulated compared to ordinarily modulated). Further, the term "any" compounds the ambiguity because it is unclear whether the claims require adding *some* or *all* "applicable" graphics and audio. Even if the patent defined which data is "applicable," one would not know whether adding some indeterminate portion of the "applicable" data meets the claim.

The ambiguity in claims 1 and 12 is significant for both infringement and prior art invalidity issues. OCP should not be given license to claim infringement by pointing to just "any" unprotected graphics and audio, but must point to "applicable" graphics and audio. Yet, the '470 patent's failure to provide any guidance as to what is "applicable" makes it impossible to determine infringement with any "reasonable certainty." *Nautilus*, 134 S. Ct. at 2124; *see also Light Transformation Techs. LLC v. Lighting Science Grp. Corp.*, No. 2:12-cv-826, 2014 WL 3402125, at **8-9 (E.D. Tex. Jul. 11, 2014) ("axis of light direction" indefinite because there were an infinite number of possible axis directions and the specification did not provide guidance as to which was claimed). So, too, for prior art invalidity. OCP should not be given the opportunity to sow confusion as to whether unprotected graphics and audio in the prior art is "applicable" or not when the term lacks "reasonable certainty."

The dependent claims further obscure the meaning of the term "any applicable" by referring to "additional" unprotected graphics and audio. Claims 9 and 10, for example, require generating and asserting "additional unprotected data." *See* Ex. 2 col. 22, ll. 30–35. Similarly, claim 14 requires a second subsystem configured to generate and assert "additional unprotected

data." *Id.* col. 23, ll. 2.[3] Thus, these claims distinguish between "applicable" unprotected graphics and audio to be added to protected content, and "additional" unprotected data that is to be generated and asserted to the closed subsystem separately. The '470 patent, however, never explains how to distinguish "applicable" and "additional" unprotected data.

As is apparent from its letter brief, OCP would like the term "applicable" to encompass "any" unprotected data that may be provided to the closed subsystem, if any is provided, regardless of the nature of the data or the mechanism used to combine it with protected content. *See* OCP Ltr. Br. at 2 (Sept. 25, 2014) (ECF No. 82-1). But this approach would render the "applicable" limitation superfluous. *See, e.g., Skyhook Wireless, Inc. v. Google, Inc.*, No. 10-11571, 2014 WL 898595, at \*\*3-4 (D. Mass. Mar. 6, 2014) (finding term "estimated characteristics" indefinite where the specification did not use the term at all, simply referred to "characteristics," and the parties' proposed constructions would make "estimated" superfluous). If the applicant wanted to refer to any data provided to the closed subsystem it could have done so very simply, without introducing an undefined term that logically requires that certain unprotected graphics and audio data may be provided but not be "applicable."

Notably, OCP does not even attempt to explain whether a person of skill in the art would understand whether the claims require adding some or all of the data that may be provided to the closed subsystem. According to OCP, claims 1 and 12 simply require that the closed subsystem be "capable" of adding unprotected data; if no such data is provided, "there is nothing to add." OCP Ltr. Br. at 2. But claims 1 and 12 are not directed to mere capability; claim 1 requires actually "adding" unprotected data and cannot be infringed by a person merely capable of doing

---

[3] Claims 15 and 16 further recite that the additional data comprises audiovisual data or menu information, respectively. *Id.* col. 23, ll. 5–8.

so. *See, e.g., Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use."). Likewise, claim 12 requires the closed subsystem actually be "configured" to add the unprotected data. *See, e.g., SIPCO, LLC v. Abb, Inc.*, No. 6:11-cv-0048, 2012 WL 3112302, at **10-11 (E.D. Tex. Jul. 30, 2012) (refusing to construe "configured to" to merely require capability where structural limitation was claimed in functional terms).

If, as OCP contends, devices embodying the invention contain a wide range of graphic and audio data, a person of ordinary skill in the art would understand that claims 1 and 12 call for some specific data that is "applicable" without being informed as to how to determine what is "applicable." The asserted claims, all of which depend from claims 1 and 12, are therefore invalid because they "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 134 S. Ct. at 2124.

### B. The Asserted Claims Are Indefinite Because They Each Claim Both An Apparatus And A Method Of Using The Apparatus

The patent statute recognizes four separate categories of patentable inventions: process, machine, manufacture, and composition of matter. 35 U.S.C. § 101. A patent claim may not simultaneously cover more than one category of subject matter because infringement would be uncertain, i.e., the claim would be indefinite. *See IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005). For example, a claim that covers both an apparatus and a method is indefinite because it is unclear whether infringement occurs when one creates an apparatus that allows a user to perform the method, or when a user actually uses the apparatus to perform the method. *See id.* at 1384. Independent claims 1 and 12 of the '470 patent are indefinite for this additional reason.

Claim 1 purports to be directed to "a method for content protection in an apparatus" and

8

recites several steps. The claim, however, also recites the elements of the apparatus used to perform the method:

> … wherein **the apparatus comprises**:
>
> an open system architecture configured to allow end users to add or remove hardware components, software modules, or both;
>
> a closed subsystem of the apparatus to receive the encrypted data, wherein the closed subsystem does not allow end users to add hardware components or software modules thereto or remove hardware components or software modules therefrom; and
>
> combiner circuitry that may add unprotected graphics and audio data to raw data;
> …

Ex. 2 col. 21, ll. 47–58 (emphasis added). Mirroring claim 1, claim 12 is generally directed to "an apparatus" and recites the components of the apparatus, but it also recites method steps for using the apparatus:

> … wherein the closed subsystem **does not allow** end users to add hardware or software components or software modules thereto …
>
> … further wherein the closed system[4] **prevents** access to the raw data outside of the closed subsystem; and
>
> an output, the closed subsystem **to assert** the protected data to an external device or system via the output.

*Id.* col. 22, ll. 45-47, 62–65 (emphases added).

Both claims 1 and 12 impermissibly combine distinct classes of patentable subject matter. It is not clear to what extent an apparatus that meets the configuration recited in claim 1 is required to infringe the claimed method. It is equally unclear whether one would infringe claim 12 simply by making or selling the claimed apparatus, or whether infringement further requires that the apparatus be used to: (1) "not allow" end users to add hardware; (2) "prevent[]" access to raw data; and (3) "assert" the protected data to an external device.

---

[4] Although there is no antecedent basis for "the closed system," Microsoft interprets this term as referring to the "closed subsystem."

Contrary to OCP's assertions, claim 1 is not merely specifying the equipment in which the method must be performed. *See* OCP Ltr. Br. at 3. Claim 1 requires concrete physical structure in excess of what is required to practice the method steps. For example, the limitation requiring the apparatus to be "configured" to allow end users to add or remove hardware is unnecessary to perform any of the claimed actions. As such, claim 1 goes beyond claiming a method for content protection performed under specific conditions; claim 1 attempts to cover the method *and* a particular apparatus used to perform the method, which is impermissible.

Nor is claim 12 "clearly limited" to an apparatus "possessing the recited structure and capable of performing the recited functions." OCP Ltr. Br. at 4. The three method steps included in claim 12—"not allow," "prevent[]" and "assert"—are not written in descriptive terms that merely define the functions or capabilities of the apparatus. The three steps are written in present tense and active form to require the closed subsystem to perform three distinct actions. Indeed, in a different portion of the claim, the applicant used "configured to" language to specify which functions of the closed subsystem the apparatus must perform. *See* Ex. 2 col. 22 ll. 38–61. This supports the conclusion that the applicant did not intend the limitations "not allow," "prevent[]" and "assert" to require mere capability. *See Aventis Pharma S.A. v. Hospira, Inc.*, 743 F. Supp. 2d 305, 329-30 (D. Del. 2010) (invalidating claims directed to "a composition . . . used to form an injectable solution" and concluding that "used to" did not merely require capability where separate part of the claim recited that the composition is "capable of being injected."). Claim 12 makes a distinction between the configuration of the apparatus and the actions that must be performed; the latter should not have been included in an apparatus claim.

Contrary to OCP's assertion, no "user" needs to be recited for an apparatus claim to be found indefinite for including method steps. In *Rembrandt Data Techs. v. AOL, LLC*, 641 F.3d

10

1331 (Fed. Cir. 2011), for example, the Federal Circuit concluded that an apparatus claim that included the step of "transmitting the trellis encoded frames" without mention of "use" or a "user" was indefinite. *See id.* at 1339-40. What makes an apparatus claim indefinite for including method limitations is the recitation of actions or steps, including those steps that can only be performed through use of the apparatus. *See, e.g., UltimatePointer, L.L.C. v. Nintendo Co.*, No. 11-cv-496, 2013 WL 2325118, at **22-23 (E.D. Tex. May 28, 2013) (finding claim directed to a pointing device indefinite for reciting data that could only be generated while a user held the pointer device). Here, to "not allow" end users to add hardware; "prevent[]" access to raw data; and "assert" the protected data to an external device as recited in claim 12, actual use of the apparatus is necessary.[5]

### C. The Asserted Claims Are Indefinite Because They Contain Permissive Language That Makes Infringement Uncertain

Claims 1 and 12, and the asserted claims, are indefinite for the additional independent reason that they require combiner circuitry "that *may add* unprotected graphics and audio data." Ex. 2 col. 21, ll. 57–58; col. 22, ll. 42–43 (emphasis added). It is well-established that permissive limitations like "may" or "can" can be omitted, i.e., need not be present to find infringement. *See, e.g., In re Johnston*, 435 F.3d 1381, 1384 (Fed. Cir. 2006); *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1342 (Fed. Cir. 2010). In the case of claims 1 and 12, however, infringement is uncertain because the term "may add" makes the combiner circuitry's addition of unprotected graphics and audio data optional, while a separate limitation in the same claims requires "adding" unprotected graphics and audio data in the combiner circuitry. Ex. 2

---

[5] Asserted dependent claim 28 further adds an impermissible method step in the limitation "wherein the apparatus executing the authentication protocol includes *verifying* that the external device or system is authorized to receive the protected data and to establish shared secret values for use in encryption and decryption of data." Ex. 2 col. 24, ll. 4–8 (emphasis added).

11

col. 21, ll. 57-58; col. 22, ll. 3–4.[6]  This uncertainty and contradiction makes the claims indefinite.  *See, e.g., Atlas IP, LLC v. St. Jude Med., Inc.*, No. 14-21006-CIV, 2014 WL 3764129, at *11 (S.D. Fla. Jul. 30, 2014) (finding claim limitation indefinite where it was subject to conflicting interpretations).

   The '470 patent and prosecution history do nothing to resolve the ambiguity in the claims.  On one hand, the specification discloses an embodiment in which the combiner circuitry is not required to add unprotected graphics and audio data to encrypted content, but merely forward one or the other to an external device.  *See* Ex. 2 col. 16, l. 52 – col. 17, l. 4 (discussing the "switch" embodiment).  On the other hand, in OCP's words, a purported "distinctive feature of the '470 invention is, in the context of content protection, the ability to use combiner circuitry within a closed subsystem to add data from an unprotected source to decrypted raw data from a protected source, prior to re-encrypting the data for output."  OCP Opening Claim Construction Br. at 7–8 (Sept. 25, 2014) (ECF No. 83).  The same contradiction—making the performance of a specified element optional—is reflected in the claims.

   Contrary to OCP's suggestion, by no means is it clear that "circuitry that can add unprotected graphics and audio data is covered by the claims, and circuitry that cannot do so is not."  OCP Ltr. Br. at 4.  Having combiner circuitry is not an option; what the claims purport to make optional is the combiner circuitry's combination of unprotected and protected content.  *See* Ex. 2 col. 21, ll. 57–58; col. 22, ll. 42–43.  Thus, a person of skill in the art could reasonably read the claims as covering combiner circuitry that does not combine this data because of the permissive language "may."  However, that same person could instead interpret the claims to

---

[6] As explained above, "configured to . . . add" in claim 12 requires that the apparatus be configured so that it actually performs the recited "add" step.

require the combiner circuitry to combine data because of the requirement that "any applicable" graphics and audio data necessarily be added using the combiner circuitry.

This ambiguity is exacerbated by the requirement in claims 1 and 12 to generate protected data "with *any added* graphics and audio data." *Id.* col. 22, ll. 7-8, 61 (emphasis added). What portion of "applicable" data, if any, must be included in the re-encrypted protected data to infringe? Because neither the '470 patent nor its prosecution history provide any guidance regarding the circumstances in which the combiner circuitry must actually add unprotected graphics and data, and how much must be added, a person of ordinary skill in the art would be unable to ascertain "with reasonable certainty" the bounds of the claims. *See Nautilus*, 134 S. Ct. at 2124.

## VII. CONCLUSION

For the reasons above, the asserted claims fail to comply with the definiteness requirement of 35 U.S.C. § 112, ¶ 2, as a matter of law. Microsoft is therefore entitled to summary judgment that the asserted claims are invalid.

Dated: October 9, 2014

Respectfully submitted,

By: */s/ John W. McBride*

| | |
|---|---|
| Jennifer Parker Ainsworth | Richard A. Cederoth |
| Texas State Bar No. 00784720 | rcederoth@sidley.com |
| jainsworth@wilsonlawfirm.com | David T. Pritikin |
| WILSON, ROBERTSON & CORNELIUS, P.C. | dpritikin@sidley.com |
| 909 ESE Loop 323, Suite 400 | John W. McBride |
| P.O. Box 7339 [75711] | jwmcbride@sidley.com |
| Tyler, Texas 75701 | SIDLEY AUSTIN LLP |
| Telephone: (903) 509-5000 | One South Dearborn |
| Facsimile: (903) 509-5092 | Chicago, Illinois 60603 |
| | Telephone: (312) 853-7000 |
| | Facsimile: (312) 853-7036 |

*Counsel for Defendant Microsoft Corporation*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who have consented to electronic service, Local Rule CV-5(a)(3), on October 9, 2014.

*/s/ John W. McBride*
John W. McBride